BELKNAP, Appellant, v. BYINGTON et al., Respondents;
GARRISON, Intervener.

No. 908; November 1, 1867.

**Execution—Description of Property.**—A Levy in Execution and
the subsequent proceedings, inclusive of the sheriff's deed, are not in-
valid because no lot of land existed having technically the designation
contained in such execution, etc., if the designation was preceded by
the words "known as," and it can be shown that at the time of such
proceedings the premises so designated were so known and are sus-
ceptible of identification.

**Execution.**—A Description Introduced by the Phrase "Known
as" is not vitiated by the subsequent phrase "marked on the official
map," when the latter is a description false in fact.

**Execution—Property Acquired Subsequently to Filing of Tran-
script.**—The statute (Laws 1850, p. 444, sec. 184) referring to the
lien of a judgment is not to be construed so as to limit property levi-
able to that owned by the judgment debtor at the time of the filing
of the transcript, thus excluding subsequently acquired property.

**Execution — Venditioni Exponas.**—It is impolitic to disturb
sales made by sheriffs under warrant of the ancient writ of venditioni
exponas during the early days of the state.

**Special Administrator.**—The Bringing of an Action Against Ad-
verse Occupants of the land of a deceased person by a special admin-
istrator, to conserve the rights of the estate, is within not only the
right but the duty of such administrator, and it is proper for the pro-
bate court to give him express authority to bring the action.

**Special Administrator.**—The Rights Conserved by a Special Ad-
ministrator in bringing an action against adverse occupants of the
land of the deceased inures to successors to the right, title and in-
terest of the deceased in the land.

**Municipal Corporation—Grant of Land to.**—The Second Section
of the Act of March 26, 1851, granted and confirmed to the city of
San Francisco the use and occupation of all the land described in the
first section, and said grant is not affected by the exception made by
the first section, which exception rests virtually on the impossible
proposition that one person can be both grantor and grantee of the
same deed.

**Deed.**—The Reservation of Land for a Particular Use imposes
upon the owner no obligation to put it to that use, but he may devote
it to any lawful use that may suit him, or may at his pleasure dispose
of it.

S. M. Wilson for appellant; Sharp & Saunders for re-
spondents and intervener.

CURREY, C. J.—This action was commenced on the 10th of April, 1860, by David P. Belknap, special administrator of the estate of David C. Broderick, deceased, to recover the possession of water lot No. 505, in the city of San Francisco. The defendants against whom the action was brought appeared and answered that they held the demanded premises as lessees under the city and county of San Francisco, and disclaimed any interest in the premises other than as such lessees, and therefore they prayed that said city and county might be allowed to intervene and defend for the defendants named and also for said city and county. The city and county of San Francisco also petitioned for leave to intervene as defendants in the action, on the ground that at its commencement she was the true and lawful owner of the premises described in the complaint and that the defendants sued were her lessees. The city and county was accordingly allowed to intervene and defend, and in her answer she controverted the material allegations of the complaint. Subsequently, in May, 1863, Wm. R. Garrison petitioned the court for leave to intervene as plaintiff, on the ground that he had succeeded to the interest of Broderick in the premises, and his petition was granted, and by his complaint he set forth facts constituting a cause of action against the defendants sued and against the city and county of San Francisco, which if taken as true, authorized and required judgment in his favor. To the complaint of Garrison the city and county answered, traversing its material allegations, and pleading the statute of limitations.

The issue so joined was tried in June, 1864, before the court and a jury. To maintain the issue on his part Garrison introduced in evidence:

1st. A judgment of the superior court of the city of San Francisco obtained on the 4th of March, 1851, by Peter Smith against the city of San Francisco and one M. Alsua, for something over forty-five thousand dollars, and evidence that a transcript thereof was duly filed in the office of the recorder of deeds in the county of San Francisco, on the 14th of that month, by which the same became a lien on all the real estate of the city in said county; and also evidence that an execution was duly issued on said judgment on the 10th of the

same month of March, and placed in the hands of the sheriff of the county, who upon that day levied upon the property in controversy with other property of the city, and advertised the same to be sold as provided by law in such cases, and that the sale was restrained by an injunction issued by competent authority on the 3d of April of the same year.

2d. A writ called a venditioni exponas, issued on the 22d of May, 1851, on the same judgment, which referred to the execution before then issued and the levy made by the sheriff upon certain property described therein, and to the enjoining of the sale, and then commanded the sheriff to cause to be sold the property so levied on, for the best price that could be obtained for the same, etc., which writ the sheriff's return, dated the twentieth day of August, 1851, shows was received by him on the day of its date, and that by virtue thereof he afterward sold all the right, title and interest of the defendants in and to the lot in controversy to David C. Broderick.

3d. A deed of conveyance bearing date the 25th of June, 1851, executed by John C. Hays, sheriff of the county of San Francisco, to David C. Broderick, which recited the issuing of an execution on said judgment on the 10th of March, 1851, and what he was thereby commanded to do, and that by virtue thereof he levied upon the right, title and interest of said city in and to certain real property, and advertised the same to be sold, and that on the day appointed for the sale he was restrained from selling by an injunction, and that the injunction was afterward dissolved, and then that another injunction was sued out which was also dissolved, and that afterward on the 22d of May, 1851, another writ, called a venditioni exponas, was issued upon said judgment commanding him to cause the property to be sold, etc.; and further recited that he, as sheriff, advertised said property to be sold, and that on the day and at the place named he sold the lot in controversy with others, to David C. Broderick, describing the same as "beach and water lots known and marked on the official map of said city now at the surveyor's office"; following which the numbers of the lots sold to Broderick were given, among which was said lot No. 505, and the price bid for the lots by the purchaser; and then follows the granting portion of the deed, granting and conveying to said Broderick and to his heirs and assigns forever, all the right, title and

interest which the said city of San Francisco had at the time of the filing of the transcript of said judgment in the recorder's office as aforesaid, or at any time afterward, of, in and to the last-mentioned and above-described land and premises. The deed was acknowledged and afterward on the 3d of September, 1858, duly recorded.

4th. The following acts with others passed by the legislature of the state of California, that is to say:

1st. An act to provide for the disposition of certain property of the state of California, passed March 26, 1851 (Laws 1851, p. 307).

2d. An act to incorporate the city of San Francisco, passed April 15, 1850 (Laws 1850, p. 223).

3d. An act to incorporate the city of San Francisco, passed April 15, 1851 (Laws 1851, p. 357).

5th. Evidence of the death of David C. Broderick on the 16th of September, 1859, leaving a last will and testament, etc.; and proceedings had in the probate court which resulted in a transfer of the title and interest which Mr. Broderick in his lifetime had in and to said lot, to the said Garrison.

Other evidence was produced on the trial by the appellant, when he rested his case. Whereupon the defendant by counsel moved the court to nonsuit the plaintiff, on the following grounds:

"First. That the proof fails to disclose that there were any such lots on the 10th of March, 1851, known and marked on the official plan as water lots Nos. 505, 506, 507, claimed in this action.

"Second. It does not appear that the city had any title to the demanded premises at the date of the levy; and no after-acquired title would inure to the benefit of the purchasers under the execution sale.

"Third. The right of entry to the plaintiff, if any ever existed, is barred to the intervener Garrison by the statute of limitations before the date of his intervention.

"Fourth. No right of entry ever vested in Belknap as special administrator.

"Fifth. The evidence shows a valid and irrevocable dedication to public uses, and the property was not subject to seizure and sale on execution."

The motion was sustained and judgment thereupon entered for the defendant, and from this judgment and an order made refusing to grant a new trial the plaintiff Garrison has appealed.

In considering the case we shall follow the order, so far as may be necessary, adopted by the counsel of the parties, who in behalf of their respective clients, have presented the case with much ability, confining ourselves to lot No. 505, as that is in fact the only lot in controversy.

I. The first ground assigned for a nonsuit was in substance that the proof failed to disclose that there was, at the time of the execution of the sheriff's deed or before then, any lot known and marked on the official map or plan of the city of San Francisco as water lot No. 505.

The sheriff's return, annexed to the execution issued to him, described certain of the parcels of land levied upon as beach and water lots known and marked upon the official map of the city of San Francisco at the surveyor's office. The numbers of the lots were designated, among which was lot No. 505. The writ of venditioni exponas contains a recital referring to the same lot as known and marked upon said map. And the sheriff's deed recites that by virtue of said execution the said sheriff did levy on and seize all the right, title and interest, which the said defendant, the city of San Francisco, had of, in and to the divers lots and parcels of land described in the advertisement of sale, made by virtue of said execution, among which lot No. 505 was described as one of "ten several beach and water lots known and marked on the official map of said city, now at the surveyor's office." So it appears that the lot was designated throughout the proceedings as beach and water lot No. 505, known and marked on the official map of the city. The counsel for the respondent, the city of San Francisco, maintains that if there was not at that time any lot or parcel of land designated on the map of the city as beach and water lot No. 505, the levy, under the execution, and the subsequent proceedings to and inclusive of the execution of the sheriff's deed, was abortive and invalid, because there was no lot of land answering the designation contained in the executions, advertisement and deed.

The official map of the city, to which reference was made, was produced in evidence, and witnesses were examined in

respect to the land described in the complaint as delineated
on the map. It is not claimed on the part of the plaintiff
that the number 505 was to be discovered on the map, but the
evidence in the case tended at least to establish the fact that
the gore of land bounded by Market, Front and Pine streets
had been known and described as lots Nos. 505, 506, and 507
by the city authorities at a date anterior to the sheriff's levy
thereon, and that these numbers were used on various occa-
sions to designate the property—each of such numbers des-
ignating a distinct portion of the same—and that 505 was the
number by which the demanded premises was known at the
time of the levy thereon and the sale and conveyance made
by the sheriff; and the appellant's counsel contends that the
word "known," as used in the sheriff's return to the execu-
tion and in the sheriff's deed and elsewhere, does not mean
known on the official map, by said number, while the word
"marked" does so mean; that the real meaning of the word
"known," considered in its relations to the context, is that the
lot was known as lot No. 505, and that the designation of the
lot as known by the number given is not vitiated or impaired
by the words "marked on the official map," which is a de-
scription false in fact.

In the interpretation of the language used to describe the
lot in question we are to ascertain, if it can fairly and reason-
ably be done, what was described. Was there in fact a beach
and water lot answering the description? And was the de-
scription of it sufficient to a legal intent to identify the
property? The maxim of the law is *falsa demonstratio non
nocet.* In the application of this maxim to an instrument
which contains a description of the subject matter, true in
part and false in part, that which is false will be rejected
and effect will be given to the instrument if that which is true
is sufficient: Bosworth v. Denzien, 25 Cal. 298. As included
in the maxim above quoted Lord Bacon applied the rule
*Praesentia corporis tollit errorem nominis, et veritas nominis
tollit errorem demonstrationis;* which he illustrated by say-
ing "If I grant my close called 'Dale' in the parish of Hurst,
in the county of Southampton, and the parish extends also
into the county of Berks, and the whole close of Dale lies in
fact in the last-mentioned county, yet this false addition will
not invalidate the grant": Broom's Maxims, 428. In the case

at bar the description is, in effect, beach and water lot known and marked on the official map of said city of San Francisco now at the surveyor's office therein as No. 505. The evidence tended to show that there was at the time such a lot, but it was not marked on said map by the number belonging to it, and by which it was known. The reference to the map as having the number of the lot marked upon it, if so read, was a falsa demonstratio, which, in our judgment, could not have the effect of vitiating the description of the lot by the number by which the evidence tended to show it was known.

II. Assuming that the lot was sufficiently described, the second ground on which the motion for a nonsuit was based was that it did not appear that the city had any title to it at the date of the levy under the execution, and that no after-acquired title could inure to the benefit of the purchaser under the sale made to satisfy the judgment of Smith against the city.

The execution issued on the Smith judgment was dated the 10th of March, 1851, and according to the sheriff's return the lot in question, with others, was levied upon, on the day of the date of the execution, and the property was advertised for sale. The sale was stayed by injunction issued on the 3d of April, 1851. At the time of issuing the injunction the property was advertised for sale and then for eight days the city had owned an interest and estate therein subject to be sold on execution. The Practice Act in force at the time provided that "all the real estate not exempted by law, whereof the defendant, or any person for his use, was seised on the day of the rendition of judgment or at any time thereafter," should be liable to be seized and sold on execution: Laws 1850, p. 444, sec. 184. The transcript of the Smith judgment was filed in the office of the recorder of deeds on the 14th of March, 1851, when, by section 172 of the same act, it became a lien on all the real estate of the debtor within the county of San Francisco. The language of the section is: "From the time of such filing, the judgment shall bind all the real estate of the debtor within the county in which the transcript is filed: Provided that if no execution be issued on the judgment within six months the lien shall be lost." A fair construction of this language did not limit the property to be so bound by the judgment to that which the debtor had at the

time the transcript was filed; but it embraced that subsequently acquired by the debtor while the lien subsisted and from the moment of the acquisition the lien of the judgment attached. Lot No. 505 was attempted to be levied on, as appears by the sheriff's return, before the transcript of the judgment was filed, and before the city had acquired any estate or interest therein, and it was advertised for sale at the time the injunction was issued. When the city acquired the right, title and interest granted by the act of the 26th of March, 1851, the property became eo instanti bound by the Smith judgment, and the writ afterward issued denominated a venditioni exponas was a sufficient warrant in the hands of the sheriff to authorize him to sell the lot in controversy, according to the decision in the case of Smith v. Morse, 2 Cal. 556. At that day writs of the kind named were in use, and sales made under them as authority were sanctioned by the courts, and we think it would lead to endless mischiefs to disturb and overthrow the sales made under them, even though we may not now be satisfied they were authorized to be issued by any express provision of the statute then in force relating to sales of real estate on execution. The sale of the lot in question was made on the 14th of June, 1851, to D. C. Broderick, to whom the sheriff executed a deed therefor. In our judgment the purchaser acquired, under the sale and the deed thereupon executed, title to the lot to the extent of the city's interest therein.

III. The third and fourth grounds for the motion to nonsuit the plaintiff may properly be considered together. It is insisted on the part of the respondent that no right of entry ever vested in Belknap as special administrator of the estate of the deceased, and that at the date of the intervention of Garrison his right of entry as the successor in interest of Broderick was barred by the statute of limitations.

At the time the action was commenced the right of action was not barred, even were it admitted that the defendants had then been in the adverse possession of the premises for five years: Laws 1855, p. 109; Billings v. Harvey, 6 Cal. 383; Billings v. Hall, 7 Cal. 1; Morton v. Folger, 15 Cal. 283, 284. Belknap was duly appointed the special administrator of the estate of the deceased on the 14th of December, 1859, and thereupon he duly entered upon the duties of the

office to which he was appointed. The probate court by order authorized him to commence and prosecute this action. By the eighty-eighth section of the probate act in force at the time, the probate judge had power in certain specified cases, to appoint a special administrator to take charge of the estate of a deceased person, and to exercise such other powers as were necessary for the preservation of the estate: Laws 1855, p. 133. If the lot in controversy was at that time in the adverse possession of the defendants, a greater necessity existed for the special administrator to take charge of it as a portion of the estate than would have existed had the defendants' possession been in subordination to the title of Mr. Broderick when he died; and it was his duty, falling within his powers as special administrator, to do whatever was necessary for the preservation of the property, and to that end he had the right to commence an action against the adverse occupants of the lot to recover its possession. This was not only his right, but it was especially his duty to do so, if that was necessary to prevent the adverse possession of the defendants ripening into a title.

Pending the action commenced by Belknap as special administrator, Garrison succeeded to the interest of the estate of the deceased in the lot, and he became by order of the court substituted as plaintiff in the action in the stead of Belknap. Such was the effect of his intervention and the order of the court thereon made: Prac. Act, sec. 16. The right conserved by the bringing of the action by Belknap inured to Garrison, who succeeded to the estate's right, title and interest in and to the lot, when the action was commenced. Any other rule would work manifest injustice in cases beyond the power of man to avoid or prevent.

IV. The fifth ground upon which the defendants moved for a nonsuit was that the evidence showed a valid and irrevocable dedication of the property to public uses, and therefore the same was not subject to seizure and sale on execution.

On the 31st of December, 1849, the ayuntamiento or town council of San Francisco passed a resolution authorizing the alcalde "to deed to the town of San Francisco, as a reserve forever," certain water lots, among which was said lot 505, described by its number, "to be reserved for public market and police stations and for no other purposes." Accordingly,

a few days thereafter "the town of San Francisco," by the alcalde, by deed "granted, bargained, sold, assigned, conveyed and confirmed, unto the said town of San Francisco, as a public reserve forever, the said water lot No. 505, situated in said town on the southeast corner of Pine and Front streets." It is not pretended that by this resolution, and deed from the town of San Francisco to the town of San Francisco, the town became invested with the title to the property described. If so it would be a complete answer to the objection that the city did not own the lot when the execution was issued on the Smith judgment; but it is claimed on the part of the city that such resolution and deed, together with the second section of the act of the 26th of March, 1851, granting and confirming all the lands and lots below high-water mark which had been sold or granted by the alcalde and confirmed by the ayuntamiento and recorded in some book of record then in the office or custody or control of the recorder of the county of San Francisco on or before the 3d of April, 1850, operated as a conveyance of the lot in question to the city for the uses and purposes expressed in the resolution and deed executed by the alcalde, which was in effect a dedication valid and irrevocable to public uses.

The second section of the act of March 26, 1851, in the first place grants to the city of San Francisco, for the term of ninety-nine years, the use and occupation of all the land described in the first section of the act, and then follows certain exceptions, one of which excepts all the lands, of the tract described, "which have been sold or granted by an alcalde of the said city of San Francisco and confirmed by the ayuntamiento or town council thereof, and also registered or recorded in some book of record now in the office, or custody or control, of the recorder of the county of San Francisco, on or before the third day of April, one thousand eight hundred and fifty, shall be and the same are hereby granted and confirmed to the purchaser or purchasers or grantees aforesaid, by the state relinquishing the use and occupation of the same and her interests therein to the said purchasers or grantees and each of them, their heirs and assigns, or any person or persons holding under them, for the term of ninety-nine years after the passage of this act." We are clearly of the opinion that the land granted by this act to the city

passed by the clause which is in the following words: "The use and occupation of the land described in the first section of this act is hereby granted to the city of San Francisco, for the term of ninety-nine years from the date of this act." The lands excepted from the above operative granting words are then designated, and granted and confirmed to the purchasers or grantees thereof. Was the city one of these purchasers or grantees? Clearly not, because the town of San Francisco could not be the grantee of the alcalde, who could only act in making grants as the representative of the town. In other words the town or city could not be both grantor and grantee; and further because it cannot be presumed the legislature intended the absurdity of granting to the city all the land described, excepting that which had been granted to the city and others already, and then granting to the city that which had been granted to her before then. If such could have been the legislative intention, then the grant to the city might be read as follows: "The use and occupation of the land described in the first section of this act is hereby granted to the city of San Francisco for the term of ninety-nine years from the date of this act, except the portion of said land which has been sold or granted to said city by any alcalde thereof, the use and occupation of which excepted portion shall be and is hereby granted to said city for the same term." We are satisfied the lot in question passed to the city under the first granting clause of the second section of the act in the same manner as the property not at all affected by previous grants passed, and that it was equally with the other beach and water lot property subject to the lien of the Smith judgment and liable to be sold on execution. From this view of the case the consideration of the question respecting a dedication of the lot to public uses, or a reservation of it to the city for particular purposes, is rendered unnecessary, though we may say the resolution of the ayuntamiento and the deed of the alcalde followed by the grant of the 26th of March, 1851, did not amount to a dedication of the lot to public uses, even were it assumed that the act of the legislature operated as a confirmation of the alcalde grant as it is denominated, and gave to it the same affect as it would have had, if the city or town had owned it absolutely when said resolution was passed and the alcalde deed was

executed. By the resolution and deed the lot was reserved for a public market and police station. The reservation did not amount to a dedication of the lot to public uses in the sense of the law, much less to an irrevocable dedication of it for a public market and police station, or the like, is manifest. A dedication of land by the owner to the public for a particular public use, if accepted by the donees of such use, is in its nature irrevocable; but whatever is the evidence relied on to establish a dedication to public uses, it must be sufficient to indicate unequivocally an intention on the part of the grantor to devote the use alleged to have been granted exclusively to the public: Irwin v. Dixion et al., 9 How. (U. S.) 30, 31, 13 L. Ed. 25; Pitcher v. New York and Erie R. R. Co., 5 Sandf. (N. Y.) 608. The reservation of the land for a particular use imposes no obligation on the owner to devote it to such use. He may apply it to any lawful use that may suit him notwithstanding, or he may dispose of it at his pleasure. At most, the lot in controversy was reserved for a public market and a police station. It does not appear that it has ever been used as a public market, that is as a market place open to the use of the public without charge, nor that it has been used as a police station. The defendants who were originally sued were the lessees or tenants of the city, from which it appears that the public had not enjoyed at any time the use for which the city claims a dedication was made.

We are of the opinion the order granting a nonsuit and the judgment thereupon entered should be reversed and a new trial granted, and it is so ordered and adjudged.

We concur: Rhodes, J.; Sanderson, J.; Shafter, J.